

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00353-CV

_____


DAVID A. SKEELS, Appellant

V.

FRIEDMAN, SUDER & COOKE, P.C., Appellee

---

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-284262-16

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

In 2015, Appellant David Skeels was fired from Appellee Friedman, Suder & Cooke, P.C. (the Firm), a law firm and closely held professional corporation.[1] For the near-decade since, the parties have been litigating the disposition of Skeels's corporate shares.

The Firm initially argued that a preexisting shareholder resolution authorized its founders to forcibly redeem Skeels's shares, and although the trial court and this court agreed, the Texas Supreme Court reversed, holding that the resolution did not satisfy Section 303.004 of the Business Organizations Code (the BOC). *Skeels v. Suder (Skeels II)*, 671 S.W.3d 664, 670–74 (Tex. 2023); *Skeels v. Suder (Skeels I)*, 665 S.W.3d 637, 648–53 (Tex. App.—Fort Worth 2021) (mem. op. on reh'g), *rev'd*, 671 S.W.3d 664 (Tex. 2023). But the Court acknowledged that the Firm could achieve the same result on remand by amending its governing document to specify the redemption price and terms it sought to impose, thereby satisfying Section 303.004(b)(2). *Skeels II*, 671 S.W.3d at 673–74.

The Firm did as the Court suggested. On remand, it amended its governing document, specified a redemption price and terms for departing employee–shareholders, and redeemed Skeels's shares over his protestations. The trial court

---

[1]*See* Tex. Bus. Orgs. Code Ann. § 21.563(a) (defining a "closely held corporation").

declared the redemption to be "effective and operative," and it granted the Firm summary judgment on all relevant related claims.

Skeels challenges that judgment. Although he now concedes—for the first time—that the Firm's redemption was effective and he is no longer a shareholder, he nonetheless argues that the redemption price was unreasonable. This argument fails on multiple grounds, as do all of Skeels's secondary complaints about other aspects of the judgment. We will affirm.

## I. Background

Skeels was fired from the Firm in late 2015, and within three months, he had filed suit.

### A. First Judgment and First Appeal

During the initial years of the parties' litigation, the Firm argued that a 2014 shareholder resolution—a resolution that authorized the Firm's founders "to take affirmative action on behalf of the Firm"—allowed the founders to redeem Skeels's shares on the founders' terms. *See* Tex. Bus. Orgs. Code Ann. § 303.004(b); *Skeels II*, 671 S.W.3d at 668–69; *Skeels I*, 665 S.W.3d at 646–53. The trial court agreed, and on appeal, we affirmed that aspect of the judgment. *See Skeels I*, 665 S.W.3d at 648–53, 664. But the Texas Supreme Court reversed, holding that because the resolution was neither a Subsection (b)(1) shareholder agreement on the price and other redemption terms nor a Subsection (b)(2) governing document specifying the price and other redemption terms, it did not satisfy BOC Section 303.004(b). *Skeels II*, 671 S.W.3d at

3

670–74; *see* Tex. Bus. Orgs. Code Ann. § 303.004(b). The Court further noted that the Firm's main governing document—its certificate of formation—did not specify the redemption price or terms either. *Skeels II*, 671 S.W.3d at 673–74. The Court acknowledged that the Firm could "conceivably change this" by "attempt[ing] to amend its governing documents," but because it had not yet done so, the Court concluded that, "at th[at] juncture," no shareholder agreements or governing documents allowed the founders or Firm to forcibly redeem Skeels's shares. *Id.*

## B.  Remand and Second Judgment

Soon after the Texas Supreme Court remanded the case, the Firm announced a shareholder meeting to amend its certificate of formation and specify a redemption price and terms. The proposed amendment stated that all shareholders were required to be fulltime Firm employees and to exclusively practice law at the Firm, and if a shareholder ceased to satisfy those conditions, "all of such Shareholder's shares . . . shall be immediately redeemed by [the Firm] for $0.001 per share."[2] Skeels voted against the amendment but the other shareholders approved it, so in late August 2023, the Firm redeemed Skeels's 1,000 shares for $1.

Meanwhile, Skeels updated his petition to add at least 5 more causes of action against the Firm. His claims included, among other things, (1) a declaratory judgment

---

[2]The 2023 amendment also specified the timeline for the redemption payment and other related administrative details.

that the 2014 resolution had not authorized the Firm to unilaterally redeem his shares (as the Texas Supreme Court had held);[3] (2) conversion "to the extent [the Firm] claimed to own or claimed to have redeemed or extinguished [his] shares"; and (3) an application for writ of mandamus to inspect the Firm's records and for the recovery of related costs and expenses, *see* Tex. Bus. Orgs. Code Ann. §§ 21.218, .222. The Firm counterclaimed for a declaratory judgment that its 2023 redemption of Skeels's shares had been valid and that its redemption price had been valid.[4]

The trial court set a schedule for summary judgment motions to narrow the issues, and it told the parties that discovery would wait until then, although they could request discovery as needed for the summary judgment proceedings. Skeels moved for partial summary judgment[5] while the Firm filed a far-reaching motion for traditional summary judgment on all relevant claims.[6] Skeels responded to the Firm's motion by

---

[3]The Firm did not contest Skeels's requested declaratory judgment and acknowledged that "[t]he Supreme Court ha[d] ruled and said that the 2016 redemption [based on the 2014 resolution] was ineffective."

[4]The Firm also requested other declarations "to the extent necessary," and it sought sanctions against Skeels, though it later dropped its request for sanctions.

[5]Skeels sought summary judgment on (1) his declaratory judgment claim, (2) several claims against the individual founders, (3) the Firm's no-proper-purpose defense to his records-related claim, and (4) the Firm's request for sanctions.

[6]The firm sought both traditional and no-evidence summary judgment, but the trial court later stated that it would not consider the Firm's no-evidence grounds for summary judgment.

5

requesting to continue the summary judgment hearing and conduct additional discovery. The trial court denied Skeels's requests, granted summary judgment for Skeels on his declaratory judgment claim regarding the 2014 resolution, granted traditional summary judgment for the Firm on its declaratory judgment claim and on all relevant remaining claims, declined to award attorney's fees to either party, and entered a final judgment summarizing its rulings.[7]

Regarding the Firm's declaratory judgment claim in particular—the focus of this appeal—the trial court declared that the Firm's "2023 actions to redeem [Skeels's] shares in [the Firm] were effective and operative." The declaration did not specifically mention the Firm's redemption price.

## II. Discussion

Skeels raises four challenges to the judgment.[8] He argues that the trial court erred by (1) declaring the 2023 redemption price valid; (2) granting summary judgment

---

[7]The Firm's founders were also parties to the trial court's judgment, but Skeels's appeal is limited to his claims against the Firm.

[8]Skeels dedicates significant portions of his brief to issues that he simultaneously concedes or otherwise declines to raise on appeal. For example, he repeatedly asserts that the Firm could not set a redemption price absent his agreement, but elsewhere in his brief, he states that, "for purposes of this appeal, [he] does not contest that [the Firm] . . . could enact a restriction that obligates [him] to sell his shares to [the Firm]." He asserts that the Firm committed conversion by "refus[ing] to honor [his] shareholder's rights," but elsewhere, he clarifies that he is "limit[ing] his recovery efforts . . . [to] pursuing conversion damages for 'the value of the property'" rather than the loss of use. And he argues that he "established *as a matter of law* that [certain Firm founders] breached their fiduciary duties," but he did not appeal the trial court's

6

against him on his conversion claim; (3) denying his motions for discovery and for a continuance of the summary judgment hearing; and (4) rejecting his request for records-related mandamus relief, costs, and expenses.[9]

## A.     Declaratory Judgment on 2023 Redemption

Skeels's primary appellate complaint relates to the $1 redemption price that the Firm paid for his shares.  Skeels admits that the redemption itself was effective but asserts that the redemption price was statutorily required to be reasonable under BOC Sections 21.211 and 21.213, that the $1 price was unreasonable, and that the Firm must pay him for the "fair value" of his now-redeemed shares.[10]  The Firm, in turn, argues

_____

judgment in favor of the individual founders, nor does he claim to have done so.  We need not address these arguments.  *See* Tex. R. App. P. 47.1.

[9]Skeels's appellate issues have been reordered for organizational purposes. Additionally, he raises a fifth challenge that is contingent on his prevailing on one of his other four challenges.  But because Skeels does not prevail on any of his other four challenges, we do not reach his fifth.  *See id.*; *infra* note 28.

[10]In other contexts, the BOC specifies "fair value" as the default redemption price for a business interest.  *See, e.g.*, Tex. Bus. Orgs. Code Ann. § 152.602 (stating that, in a general partnership, "the redemption price of a withdrawn partner's partnership interest is the fair value of the interest on the date of withdrawal" unless the partner wrongfully withdraws, in which case it is the lesser of two specified calculations).  Skeels has not cited any comparable statutory provision for a closely held professional corporation.  And in his 2023 oral argument before the Texas Supreme Court, Skeels acknowledged that he was "not aware of a statute whereby [he] could force th[e Firm] to buy out [his] shares," but he asserted that if the Firm chose to repossess his shares without a Section 303.004(b) agreement or governing document specifying the redemption price and terms, then under common law, he was entitled to receive "fair value" for the shares.  Transcript of Oral Argument at 15–16, *Skeels II*, 671 S.W.3d 664 (No. 21-1014).

that the statutory reasonableness requirement applies to "restriction[s] placed on the transfer . . . of a security" and that a redemption price is not a "restriction placed on [a] transfer." *Id.* §§ 21.211(a), .213(a).

## 1.    Standard of Review

Whether the statutory reasonableness requirement applies to the Firm's redemption price is a matter of statutory construction—a question of law we review de novo.[11] *See Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014).

In construing a statute, our primary objective is to give effect to the legislature's intent, and "[t]he surest guide to what lawmakers intended is the enacted language of [the] statute." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (internal quotation marks omitted); *see Ritchie*, 443 S.W.3d at 866. We examine the statute's plain language in context, reading the statute as a whole rather than viewing words or provisions in isolation. *See Youngkin*, 546 S.W.3d at 680 (reiterating that "legislative intent derives from an act as a whole rather than from isolated portions of it"). We "cannot divorce text from context," as context has an "enormous power . . . to transform the meaning of language"—particularly the meaning of "everyday words and phrases that are inordinately context-sensitive." *In re Off. of the Att'y Gen. of Tex.*, 456 S.W.3d 153, 155–56 (Tex. 2015) (orig. proceeding).

---

[11]Even absent a question of statutory construction, we would review the summary judgment de novo. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex. 2004).

8

## 2. Statutory Landscape and Plain Language

Chapter 303 of the BOC governs professional corporations. *See* Tex. Bus. Orgs. Code Ann. §§ 303.001–.006; *see also id.* §§ 301.001–.012 (addressing professional entities generally). It establishes parameters for those corporations' restrictions on share transfers, *see id.* § 303.003, and in other sections, it addresses the corporations' redemptions of shares, *see id.* § 303.004. On the latter issue—redemptions by professional corporations—the BOC authorizes "[a] professional corporation [to] redeem shares of a shareholder" when "[t]he price and other terms of a redemption of shares [are] . . . specified in the governing documents of the professional corporation." *Id.*; *see Skeels II*, 671 S.W.3d at 670–71. It is undisputed that the Firm's 2023 repossession of Skeels's shares was a redemption falling within this statute's ambit.

But in addition to Chapter 303, the BOC also requires professional corporations to comply with Chapter 21, which governs for-profit corporations in general. *See* Tex. Bus. Orgs. Code Ann. § 303.001 (providing that Chapter 20 and 21 apply "unless there is a conflict" with the statutes specific to professional corporations). And much like Chapter 303, Chapter 21 contains statutes on both share transfer restrictions, *see, e.g., id.* §§ 21.209–.213, and, elsewhere, redemptions, *see, e.g., id.* §§ 21.304–.307. The Chapter 21 provisions related to share transfer restrictions are at the heart of this dispute.

Chapter 21's default rule is that "the shares and other securities of a [for-profit] corporation are [freely] transferable."[12]  *Id.* § 21.209 (recognizing transferability in accordance with certain statutes); *see Skeels I*, 665 S.W.3d at 669 (Birdwell, J., dissenting). The statute provides for exceptions, however, authorizing a corporation to impose "[a] restriction on the transfer or registration of transfer of a security" and making such a "restriction placed on the transfer . . . of a security . . . specifically enforceable against the holder . . . if . . . the restriction is reasonable."  Tex. Bus. Orgs. Code Ann. §§ 21.210(a), .213(a).  The corporation's "general power[] . . . to impose and enforce reasonable restrictions" recognized in Section 21.213 is expounded upon in Section 21.211, which provides that "a restriction placed on the transfer . . . of a security . . . is valid if [it] reasonably . . . obligates the holder . . . to sell or transfer an amount of restricted securities to . . . the corporation."  *Id.* § 21.211(a)(8).

### 3.    Effect of Skeels's Concession

While the parties' core dispute turns on the statutory reasonableness requirement's applicability to the Firm's redemption price, Skeels's appellate argument contains a material concession—and arguably a dispositive one.

---

[12]But due to the specialized nature of professional entities, ownership is limited to authorized persons, Tex. Bus. Orgs. Code Ann. § 301.007, so by statute, shares in a professional entity may be transferred "only to:  (1) an owner of the entity; (2) the entity itself; or (3) an authorized person," *id.* § 301.009.  This limitation is irrelevant to the dispute here.

In his brief, Skeels concedes that which he has disputed up until this point: that the 2023 redemption transaction was effective. Skeels goes so far as to "irrevocably and unequivocally disclaim[] any ownership of, or claim of ownership in, the shares" and to "unequivocally represent[] that he will not at any point in the future assert an ownership right or interest in [the Firm] or the 1,000 shares of [Firm] stock or otherwise seek to reclaim or recover ownership of the shares." But despite this concession, Skeels continues to challenge the redemption price's reasonableness, implicitly assuming that the validity of the redemption price is independent from that of the redemption itself.

Whether that distinction is legally accurate,[13] Skeels did not draw it before the trial court, and the trial court did not draw it in the declaratory judgment. Although

---

[13]Skeels's distinction assumes that the BOC gives effect to a redemption transaction even if the redemption price or terms are invalid. But the history of this very case calls that assumption into question. When the Texas Supreme Court held that the 2014 resolution did not allow the founders to unilaterally dictate the redemption price or terms, the effect of that holding was the Court's invalidation of the purported redemption transaction. *See Skeels II*, 671 S.W.3d at 674 (concluding that "the 2014 Resolution did not authorize redemption of Skeels's shares on terms dictated by the [f]ounders"); *id.* at 675 (Hecht, C.J., dissenting) (noting that the majority's holding invalidating the redemption terms resulted in Skeels's "maintain[ing] an ownership interest in the firm" whereas a contrary reading of the 2014 resolution to authorize the founders' decision on the redemption terms would not); *see also* Judgment, *Skeels II*, 671 S.W.3d 664 (No. 21-1014) (reversing the "portion of the court of appeals' judgment regarding the declaratory judgment that a corporate resolution authorized the redemption of shares"); Mandate, *Skeels II*, 671 S.W.3d 664 (No. 21-1014) (similar); *cf. Skeels I*, 665 S.W.3d at 650 (noting Skeels's argument in prior appeal that "the term 'redemption' [in the BOC] is necessarily conditioned on specified redemption terms" and that there is an "'interdependence' between a redemption and an advance arrangement on price").

11

Skeels disputed the redemption price in his summary judgment response, he did so as one of several attacks on the redemption transaction itself. Likewise, the Firm's motion for summary judgment sought a declaration that the redemption transaction was valid, and it addressed the redemption price only as a part of that broader argument. The trial court followed suit, making no mention of the redemption price when it declared that the Firm's "2023 actions to redeem [Skeels's] shares in [the Firm] were effective and operative." Yet, the redemption's "effective and operative" nature is precisely what Skeels has now conceded.

If we accept Skeels's newfound distinction between the redemption price's validity and the redemption's validity, then the declaratory judgment speaks only to the latter—it says nothing about the redemption price, making Skeels's attempt to challenge the declaration based on the unmentioned price inapt. But if we reject Skeels's distinction, then by his concession of the redemption's validity, he has conceded the redemption price's validity as well, thereby conceding his appellate challenge to the declaratory judgment.

Either way, Skeels's concession guts his challenge to the trial court's declaration.

---

Regardless, because Skeels's declaratory judgment challenge fails for multiple other reasons, we need not address the legal accuracy of his distinction between a redemption's validity and a redemption price's validity. *See* Tex. R. App. P. 47.1.

12

#### 4. Statutory Reasonableness Requirement Inapplicable

Even if we accept Skeels's distinction between the redemption price's validity and the redemption transaction's validity, and even if we pretend that—despite the distinction—the declaratory judgment addressed both, the statutory reasonableness requirement does not apply to the Firm's redemption price anyway. Sections 21.211 and 21.213 apply to "a restriction placed on the transfer . . . of a security," *id.* §§ 21.211(a), .213(a), and the Firm's 2023 redemption was not a "transfer . . . of a security" within the meaning of those statutes.

Granted, the BOC does not define "transfer," and taken out of context, the term's ordinary meaning is extremely broad. *See REME, L.L.C. v. State*, 709 S.W.3d 608, 611 (Tex. 2025) (reiterating that courts apply the "plain meaning" of statutory text "unless a different meaning is apparent from the context"); *Transfer*, Black's Law Dictionary (12th ed. 2024) (defining transfer as "[a]ny mode of disposing of or parting with an asset or an interest in an asset"). But "[t]he import of language, plain or not, must be drawn from the surrounding context." *Off. of the Att'y Gen.*, 456 S.W.3d at 155–56 (acknowledging that, "[t]aken out of context, the Family Code's 'any other order' language might seem a sweeping provision of power," but concluding that context required a different interpretation). And here, the surrounding context reveals that "transfer" is often used as a term of art in the BOC and that when employed in that

13

manner, a "transfer" does not include a "redemption."[14]  *See REME*, 709 S.W.3d at

611–12 (recognizing that "[w]e examine the technical or particular meaning the words

have acquired and consider specific statutory language in context," and holding that

reference to filing "with the court" included filing with the court's clerk based on

acquired, commonly understood meaning); *Youngkin*, 546 S.W.3d at 680–81 ("It is by

now axiomatic that we must construe individual words and provisions in the context of

the statute as a whole.").  In fact, the legislature put transfers and redemptions in

mutually exclusive buckets.

Chapter 21 of the BOC classifies a for-profit corporation's "purchase or

redemption, directly or indirectly, of any of its own shares" as a form of "[d]istribution"

while "a transfer of the corporation's own shares" is expressly excluded from the

definition of a "[d]istribution."  Tex. Bus. Orgs. Code Ann. § 21.002(6).[15]  In keeping

---

[14]The BOC does not define "redemption" either.  *Cf. Skeels II*, 671 S.W.3d at 665 n.1 (noting that "'[r]edemption' generally refers to the 'act or an instance of reclaiming or regaining possession by paying a specific price,' including 'reacquisition of a security by the issuer'" (quoting *Redemption*, Black's Law Dictionary (11th ed. 2019)); *Redemption*, Black's Law Dictionary (12th ed. 2024) (defining redemption in securities context as "[t]he reacquisition of a security by the issuer").

[15]A distribution is "a transfer of property . . . by a corporation to its shareholders in the form of:  (i) a dividend . . . ; (ii) a purchase or redemption, directly or indirectly, of any of its own shares; or (iii) a payment by the corporation in liquidation of all or a portion of its assets."  Tex. Bus. Orgs. Code Ann. § 21.002(6)(A).  The word "does not include:  (i) a . . . division of the issued shares . . . into a larger number of shares within the same class that does not increase the stated capital of the corporation; or (ii) a transfer of the corporation's own shares or rights to acquire its own shares."  *Id.* § 21.002(6)(B).

with these classifications, the parameters for redemptions are established in the "Distributions and Share Dividends" subchapter, while the parameters for transfers and transfer restrictions are set forth elsewhere, in the "Shareholder Rights and Restrictions" subchapter. *Compare id.* §§ 21.201–.226 (Subchapter E, entitled "Shareholder Rights and Restrictions"), *with id.* §§ 21.301–.318 (Subchapter G, entitled "Distributions and Share Dividends"); *see also id.* § 1.051 (providing for Code Construction Act's application to BOC); Tex. Gov't Code Ann. § 311.023(7) (recognizing that, in construing a statute, a court may consider the title); *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307–08 (Tex. 2010) (orig. proceeding) (considering heading as part of statutory construction and noting that, while a "heading cannot limit or expand the statute's meaning," it "gives some indication of the [l]egislature's intent").

And the parameters themselves reflect a substantive distinction between transfers and redemptions. A "redemption of redeemable shares takes effect by call and written notice of the redemption of the shares," Tex. Bus. Orgs. Code Ann. § 21.304(c), while a share transfer generally takes effect upon delivery of the certificate to the transferee, and it gains corporate recognition upon registration of the transaction in the corporation's share transfer records.[16] *See* Tex. Bus. & Com. Code Ann.

---

[16]*But see Krainz v. Kodiak Res., Inc.*, 436 S.W.3d 325, 331–33 (Tex. App.—Austin 2013, pet. denied) (recognizing that "[t]he law does not require possession of a stock certificate to substantiate a claim of ownership of stock" and explaining that "establishing ownership without stock certificates depends on the evidence presented" regarding the parties' relationship and representations); *Hydroscience Techs., Inc. v.*

§§ 8.104(a)(1), .207(a), .301(a)(1); Tex. Bus. Orgs. Code Ann. §§ 21.201(a), .209, .215; Eric Fryar, *Filling in the Gaps: Shareholder Oppression After Ritchie v. Rupe: Part 2*, 47 Tex. J. Bus. L. 1, 7 (2018). When a redemption is complete, the "shares called for redemption are not considered outstanding," Tex. Bus. Orgs. Code Ann. § 21.306(c); *see id.* § 21.251(a)(1) (providing for cancellation "[a]t the time a corporation redeems or purchases the redeemable shares"), but when a share transfer is complete, the shares typically remain outstanding,[17] *see id.* § 21.209; *see generally* Tex. Bus. & Com. Code Ann. §§ 8.302, .307. And while a share's redeemable nature is an "[o]ptional [c]haracteristic[]" that may be provided for in the corporation's certificate of formation (or in an entity-specific statute),[18] Tex. Bus. Orgs. Code Ann. § 21.154(a)(1), "the shares and other securities of a corporation are transferable" by default, *id.* § 21.209.

---

*Hydroscience, Inc.*, 401 S.W.3d 783, 792–93 (Tex. App.—Dallas 2013, pet. denied) (similar, acknowledging the "case law that holds delivery of a stock certificate . . . is not necessarily required to show a transfer of stock" if a party demonstrates that "the minds of transferor and transferee met" and "there was an intention that the stock should then and there be vested in the transferee").

[17]*But compare* Tex. Bus. Orgs. Code Ann. § 2.101(9) (authorizing a domestic entity to "acquire its own ownership interests, regardless of whether redeemable, and hold the ownership interests as treasury ownership interests or cancel or dispose of the ownership interests"), *with id.* § 21.251(a)(1) (providing for cancellation "[a]t the time a corporation redeems or purchases the redeemable shares").

[18]*See Skeels I*, 665 S.W.3d at 671 (Birdwell, J., dissenting) (explaining that "Section 303.004 . . . sets forth a more expansive ability to redeem professional-corporation stock than does Chapter 21 for for-profit corporations generally[; p]rofessional corporations may redeem shares even if those shares are not designated redeemable").

The statutory scheme governing professional corporations thus demonstrates that, in many instances, the word "transfer" is used as a term of art distinct from a "redemption" transaction.[19] *See, e.g.*, *id.* § 21.002(6) (classifying a "redemption" as a "distribution" while excluding "a transfer of the corporation's own shares" from the

---

[19]Other governing statutes recognize this distinction as well. "[T]he shares . . . of a corporation are transferable in accordance with Chapter 8, Business & Commerce Code," Tex. Bus. Orgs. Code Ann. § 21.209, and that Chapter

- defines an "[e]ntitlement order" as "a notification . . . directing transfer or redemption of a financial asset," Tex. Bus. & Com. Code Ann. § 8.102(a)(8);

- defines an "[i]ndorsement" as "a signature . . . made . . . for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it," *id.* § 8.102(a)(11); and

- defines an "[i]nstruction" as "a notification . . . that directs that the transfer of the security be registered or that the security be redeemed," *id.* § 8.102(a)(12).

Each of these definitions uses the disjunctive "or" between "transfer" and "redemption," reflecting that the concepts are distinct. *See id.* § 8.102(a)(8), (11), (12); *Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 24 (Tex. 2021) (noting that "'or' is typically understood as a disjunctive term"); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 581 (Tex. 2000) (interpreting Texas Constitution and noting that "the disjunctive conjunction 'or' between the two phrases . . . signifies a separation between two distinct ideas"). Had the legislature described a transfer as "including" a redemption, then lumping the two together would make sense. But the legislature repeatedly chose "or," and we presume that it did so intentionally. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 642 (Tex. 2013) ("We have previously held that the [l]egislature's use of the disjunctive word 'or' is significant when interpreting statutes."); *see also Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014) ("We presume the [l]egislature chose statutory language deliberately and purposefully.").

definition). And the context and language of the statutes at issue here—Sections 21.211 and 21.213—confirm that they employ "transfer" in this specialized sense.

Sections 21.211 and 21.213 follow hot on the heels of the general rule that shares are freely transferable, *see id.* §§ 21.209, .211, .213, and they apply the reasonableness requirement to "restriction[s]" on this general "transfer[ability]," *id.* §§ 21.211(a), .213(a). The statutes are situated within the "Shareholder Rights and Restrictions" subchapter rather than the "Distributions and Share Dividends" subchapter, *see id.* §§ 21.201–.226, .301–.318, and they expressly reference the registration event that plays a key role in a transferee's recognition as a shareholder—a nonissue in redemptions, *id.* §§ 21.201(a), .211, .213(a), .215, .304(c), .306(c).

Skeels has not identified any statutory language to support his assertion that a redemption qualifies as a "transfer . . . of a security" within the meaning of BOC Sections 21.211 and 21.213,[20] nor has he cited any case law interpreting the statutes in that manner. *See id.* §§ 21.211, .213; *cf.* 20 Elizabeth S. Miller & Robert A. Ragazzo, *Texas Practice Series: Business Organizations* § 30.14 (3d ed. 2024) (describing "[s]hare transfer restrictions [as] constitut[ing] contractual obligations to offer shares either to

---

[20]Confusingly, in Skeels's discussion of a related statute—BOC Section 21.210(b)—he represents that he "never made th[e] argument" that the Firm's 2023 amendment was a "restriction on transfer" and emphasizes that Section 21.210 "is not limited to restrictions on share transfers." His discussion of Section 21.211(a), meanwhile, quotes the word "restriction" without acknowledging the modifying phrase, "placed on the transfer . . . of a security." Tex. Bus. Orgs. Code Ann. § 21.211(a).

the corporation or to other shareholders . . . before selling or disposing of the shares to outsiders"). Were we to subject the Firm's redemption—i.e., its distribution—to the requirements for "restriction[s] . . . on . . . the transfer . . . of a security"—i.e., restrictions on non-distributions—then we would be infusing the BOC's plain language with an irreconcilable inconsistency. Tex. Bus. Orgs. Code Ann. §§ 21.002(6), .211, .213(a). And we are required to do the opposite: to presume that the legislature intended for the entire statute to be effective and to avoid constructions that would render portions of it meaningless. *See* Tex. Gov't Code Ann. § 311.021(2); *Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 491 (Tex. 2022) (explaining that, when interpreting a statute, "[w]e give effect to all included words"); *Crosstex Energy Servs.*, 430 S.W.3d at 390–91 (reiterating that appellate courts "cannot adopt an interpretation that would render a statutory provision meaningless" or "interpret [a] statute in a manner that renders any part of [it] . . . superfluous" (internal quotation marks omitted)); *cf. Spradlin*, 34 S.W.3d at 580 ("We avoid constructions that would render any constitutional provision meaningless or nugatory.").

Skeels's proposed interpretation is thus untenable. The Firm's 2023 redemption of his shares was not a "transfer . . of a security" within the meaning of Sections 21.211 and 21.213,[21] Tex. Bus. Orgs. Code Ann. §§ 21.211(a), .213(a), and the reasonableness

---

[21]Given "the enormous power of context to transform the meaning of language," our holding is limited to the statutes at issue. *Off. of the Att'y Gen.*, 456 S.W.3d at 155–

requirement in those Sections is irrelevant to whether the Firm's redemption—or redemption price—was, as the trial court declared, "effective and operative." Even if Skeels's concession had not already gutted his appellate argument, his challenge to the declaratory judgment would fail on the merits.

We overrule Skeels's first issue.

## B.    Summary Judgment on Conversion Claim

Our overruling of Skeels's declaratory judgment challenge also resolves his second issue: his challenge to the summary judgment on his conversion claim. Skeels asserts that the summary judgment was erroneous because "[the Firm] has never properly redeemed his shares by paying an amount commensurate with their value."[22] But we have already rejected Skeels's argument that the Firm's redemption price was statutorily noncompliant, and Skeels has not cited any other statute or authority that

---

56. In other contexts—even within the BOC—the word "transfer" may or may not have a specialized meaning.

[22]Portions of Skeels's appellate brief further argue that the Firm denied him the "benefits of shareholder status." But in a footnote, he clarifies that, from his perspective, the conversion occurred when the Firm redeemed (or claimed to have redeemed) his shares, and he "limit[s] his recovery efforts . . . [to] pursuing conversion damages for 'the value of the property'" rather than the loss of use. *See R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d 238, 242–43 (Tex. App.—Dallas 2012, no pet.) (recognizing that "[a] plaintiff who establishes conversion is entitled to either (1) the return of the property and damages for its loss of use during the time of its detention, or (2) the value of the property" and that the plaintiff "must elect to recover the property itself or the fair market value in damages"). This aligns with Skeels's live petition; he pleaded conversion based on the Firm's redemption of his shares—not its denial of the shares' benefits.

requires a Section 303.004 redemption price to be "commensurate with [the shares'] value."[23]

We overrule Skeels's second issue.

## C.     Denial of Discovery-Related Continuance

Our overruling of Skeels's conversion challenge in turn undermines his next issue: his argument that the trial court "erred by denying [him] an opportunity to conduct discovery . . . relevant to share valuation and his conversion claim"[24] and by "den[ying his] motion to continue the summary judgment hearing" on that basis.[25] *See*

---

[23]During oral argument before the Texas Supreme Court, Skeels acknowledged that his claimed entitlement to "fair value" for his shares was premised on the absence of a Section 303.004 shareholder agreement or governing document specifying the redemption price and terms. Transcript of Oral Argument at 15–16, *Skeels II*, 671 S.W.3d 664 (Tex. 2023) (No. 21-1014); *cf. Skeels II*, 671 S.W.3d at 673 (noting that "[w]hen all is said and done, Skeels's shares may prove to have little to no market value"); Miller & Ragazzo, *supra*, § 30.14 (noting that "closely held shares have no market on which value can be based").

[24]Skeels's trial court motion alleged that he needed to conduct additional discovery on multiple claims, but of those, the conversion claim is the only one at issue in this appeal.

[25]This challenge to the trial court's ruling is inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring an appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

The portion of Skeels's argument addressing the issue contains just six sentences. *See Gunderson v. Nat'l Indoor RV Ctrs., LLC*, No. 02-24-00025-CV, 2024 WL 3365233, at *3 (Tex. App.—Fort Worth July 11, 2024, no pet.) (mem. op.) (holding appellant inadequately briefed issue when "he dedicate[d] just six sentences to it" with no legal citations). Although Skeels filed separate motions for leave to conduct discovery and to continue the summary judgment hearing on that basis, and although he obtained

Tex. R. Civ. P. 166a(g) (authorizing trial court to order a continuance for further discovery "[s]hould it appear from the affidavits of a party opposing the [summary judgment] motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition"); *see Luminex Corp. v. Hiller*, No. 02-23-00256-CV, 2024 WL 4293381, at *7–8 (Tex. App.—Fort Worth Sept. 26, 2024, no pet.) (mem. op.). Again, Skeels has not identified any statute or authority that requires a Section 303.004 redemption price to align with a "share valuation"; his conversion claim failed as a matter of law with or without "valuation" evidence. *See* Tex. R. Civ. P. 166a(b), (c); *see*

---

separate rulings on those motions at two distinct points in time, Skeels does not identify which motion he believes the trial court should have granted. Furthermore, Skeels provides no record references, no citations to case law, and not even a token citation to the applicable Rules of Civil Procedure. *See id.* (noting that, apart from appellant's "recitation of the standard of review," the argument portion of his appellate brief "lack[ed] any case law whatsoever" and "d[id] not cite to the [governing statute] at all"); *see also* Tex. R. Civ. P. 166a(g), 251, 252.

"Failure to provide citation to the record or citations for legal references constitutes inadequate briefing and waiver." *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 446–47 (Tex. App.—Fort Worth 2023, pet. denied); *see Gunderson*, 2024 WL 3365233, at *2. We are not "responsible for searching the record for facts that are favorable to the appellant's position"—particularly when, as here, the clerk's record exceeds 4,000 pages. *Gunderson*, 2024 WL 3365233, at *2; *NexPoint Advisors*, 674 S.W.3d at 446–47. Likewise, this court cannot scour the law and "develop [Skeels's] legal arguments for him before resolving the appeal based on the legal arguments we crafted on his behalf." *Gunderson*, 2024 WL 3365233, at *4 (internal quotation marks omitted); *see NexPoint Advisors*, 674 S.W.3d at 446.

Nonetheless, because we strive to reach the merits of an appeal whenever reasonably possible, *Horton v. Stovall*, 591 S.W.3d 567, 570 (Tex. 2019), we attempt to do so.

*also Joe*, 145 S.W.3d at 157 (noting that traditional summary judgment is proper if the movant "show[s] that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law"). Therefore, the trial court did not abuse its discretion by denying Skeels's requests to delay the summary judgment hearing for further discovery on the valuation of his shares. *See* Tex. R. Civ. P. 166a(b) (providing for traditional summary judgment in favor of defendant "at any time"), (g) (authorizing continuance when discovery is "essential to justify [the responding party's] opposition"); *Luminex Corp.*, 2024 WL 4293381, at *8 (reviewing ruling on similar motion for an abuse of discretion); *Reynolds v. MBRV I, LLC*, No. 02-21-00242-CV, 2022 WL 623481, at *3 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op.) (same).

Moreover, and for the same reason—because "share valuation" evidence could not have saved Skeels's conversion claim—the trial court's ruling did not materially impact the outcome of the summary judgment hearing or the disposition of this appeal. *See* Tex. R. App. P. 44.1(a) (providing that an error warrants reversal only if it results in the rendition of an improper judgment or prevents the appellant from properly presenting his appeal).

We overrule Skeels's third issue.

## D.   Summary Judgment on Records-Related Claims

Finally, Skeels challenges the trial court's failure to issue a writ of mandamus granting him access to the Firm's records and its failure to award him related fees and expenses. Skeels claims that, contrary to the Firm's summary judgment argument, his

23

records requests—particularly the request he submitted in January 2016 before litigation began and the requests he submitted following remand in 2023—stated a proper purpose.[26] *See* Tex. Bus. Orgs. Code Ann. § 21.218(b) (providing that a shareholder is entitled to examine and copy records "[o]n written demand stating a proper purpose").

As an initial matter, Skeels's request for mandamus relief is moot. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (reiterating that "[a] case becomes moot when there ceases to be a justiciable controversy between the parties[,] . . . when the parties cease to have a legally cognizable interest in the outcome," or "when events make it impossible for the court to grant the relief requested" (internal quotation marks omitted)); *cf. Hartman Income Reit, Inc. v. MacKenzie Blue Ridge Fund III, LP.*, No. 01-20-00218-CV, 2022 WL 2124905, at *1 (Tex. App.—Houston [1st Dist.] June 14, 2022, no pet.) (per curiam) (mem. op. on reh'g) (holding parties' dispute over appellee's statutory entitlement to shareholder list was rendered moot while motion for rehearing was pending due to appellant's new governing document authorizing shareholder access to

---

[26]Skeels also states that, "from March 2016 through September 2017, [he] made multiple attempts to exercise his statutory rights, including written demands to examine the corporate records." But the actions he mentions are all steps he took as part of the present litigation, e.g., "fil[ing] his Original Petition," requesting mandamus relief "to compel examination" of the records, "brief[ing] his Application for Writ of Mandamus" for the trial court, raising the subject in hearings, seeking attorney's fees related to his mandamus petition, and moving for a separate trial on certain issues. Skeels does not cite any legal authority for the idea that such litigation actions constitute a "written demand" within the meaning of Section 21.218 of the BOC. *See* Tex. Bus. Orgs. Code Ann. § 21.218.

list). It is undisputed that his shareholder status ceased when the Firm redeemed his shares in 2023 and that he is no longer statutorily entitled to access the Firm's records. *See* Tex. Bus. Orgs. Code Ann. § 21.218(b) (providing for records access upon demand from "a holder of shares of a corporation" who meets certain conditions). Skeels's mandamus request lingers as a live controversy only to the extent necessary to determine the Firm's liability for his "cost[s] or expense[s], including attorney's fees, incurred in enforcing [his] rights" while he was a shareholder. *Id.* § 21.222(a); *see Harper*, 562 S.W.3d at 7–8 (recognizing that "in some cases . . . a claim for attorney's fees [may] 'breathe[] life' into a suit that has become moot in all other respects").

On that front, Skeels has not challenged every basis for the trial court's summary judgment. First, regarding his pre-litigation records request in 2016, the Firm's summary judgment motion asserted not only that the request lacked a proper purpose but also that the Firm had not "refuse[d]" to comply and had instead "substantially complied." [Capitalization altered.] *See* Tex. Bus. Orgs. Code Ann. § 21.222(a) (imposing liability when corporation "refuses" to allow examination of records); *Westerburg v. W. Royalty Corp.*, No. 07-15-00082-CV, 2015 WL 8781425, at *5–6 (Tex. App.—Amarillo Dec. 11, 2015, pet. denied) (mem. op.) (interpreting "refuse" in Section 21.222 and affirming trial court's denial of relief when evidence showed that corporation had failed to provide access but not affirmatively refused). Although Skeels acknowledges both summary judgment arguments in his appellate brief, he discards the

25

latter argument without analysis, instead focusing on the Firm's contention that his records request lacked a proper purpose.

Similarly, regarding the records requests that Skeels sent in 2023, the Firm's summary judgment motion asserted not only that the requests lacked a proper purpose but also that they had been rendered moot by the Firm's redemption of Skeels's shares within days. *Cf.* Tex. Bus. Orgs. Code Ann. § 21.218(b) (entitling shareholder to examine and copy records "at a reasonable time"). On appeal, though, Skeels does not even mention this alternative argument, again focusing on whether the records requests stated a proper purpose.

"[W]e must affirm a summary judgment if any ground on which the judgment could have been based stands unchallenged—'regardless of the merits of the unchallenged ground[s].'" *Madhu Lodging Partners, LP v. AmGuard Ins. Co.*, No. 02-23-00379-CV, 2024 WL 2760482, at *2 (Tex. App.—Fort Worth May 30, 2024, pet. denied) (mem. op.) (quoting *McCurley v. Tex. Motor Speedway, Inc.*, No. 02-19-00108-CV, 2019 WL 6606103, at *1 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.)). Because Skeels does not challenge every ground on which the trial court's records-related summary judgment could have been based, we "must affirm" on those grounds and overrule his final issue.[27] *Id.*

---

[27]Although Skeels argues in his reply brief that the Firm did not substantially comply with his pre-litigation records request, "[a] party may not raise new issues for the first time on appeal in a reply brief." *Jimison v. MAEDC-Hulen Bend Senior Cmty.,*

### III. Conclusion

The Firm redeemed Skeels's shares in accordance with BOC Section 303.004(b)(2), the Texas Supreme Court's guidance, and the Firm's certificate of formation. The trial court did not err by declaring that such redemption was "effective and operative," nor did it err by granting summary judgment on Skeels's conversion and records-related claims.[28] We affirm the trial court's judgment.[29] *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: May 29, 2025

---

*L.P.*, No. 02-23-00206-CV, 2024 WL 3282544, at *7 n.10 (Tex. App.—Fort Worth July 3, 2024, no pet.) (mem. op.); *see* Tex. R. App. P. 38.3; *Madhu Lodging Partners*, 2024 WL 2760482, at *2 n.5.

[28]Because we affirm, we need not address Skeels's contingent fifth issue, in which he asserts that, "[i]f this Court reverses on *any* of the issues raised . . . then [we] must reverse and remand for reconsideration of whether an award to Skeels [of attorney's fees and expenses under the Declaratory Judgments Act] would be equitable and just." *See* Tex. R. App. P. 47.1.

[29]Skeels's pending motions and objections are denied.